UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PACIFIC NORTHWEST REGIONAL COUNCIL OF CARPENTERS,<br><br>Petitioner,<br><br>v.<br><br>LABORERS INTERNATIONAL UNION OF NORTHERN AMERICA, et al.,<br><br>Respondents. | CASE NO. C11-1164 MJP<br><br>ORDER ON SUMMARY JUDGMENT MOTIONS |

This matter comes before the Court on Respondent Laborer International Union of Northern America ("LIUNA") and Respondent Seattle/King County Building and Construction Trades Council AFL-CIO's ("BCTC") motions for summary judgment. (Dkt. Nos. 42, 66.) Having reviewed the motions, the responses (Dkt. Nos. 56, 78), the replies (Dkt. Nos. 63, 83), and all related papers, the Court DENIES Respondent LIUNA's motion for summary judgment and DENIES in part and RESERVES RULING in part on Respondent BCTC's motion for summary judgment to allow for additional discovery as requested by Petitioner.

ORDER ON SUMMARY JUDGMENT MOTIONS- 1

**Background**

This case concerns a union dispute arising out of the assignment of compressed air tunnel work under the Sound Transit Link Light Rail Project Labor Agreement ("PLA"). The prime contractor, Traylor-Frontier-Kemper ("TFK") assigned compressed air tunnel work to Ballard Diving and Salvage ("Ballard"). (Dkt. No. 43-1 at 38.) On May 17, 2011, Ballard assigned its work to LIUNA-affiliated members. Petitioner Pacific Northwest Regional Council of Carpenters ("Carpenters") objected to this on May 24, 2011. (Id. at 12.)

On June 27, 2011, Carpenters asserted that the disputed work assignment to Ballard involved allegedly "non-traditional" work and requested to proceed with dispute resolution under PLA Article 16.2(a). (Dkt. No. 43 at 5.) Under that article, the International Unions and the Contractor must meet to resolve disputes the local unions cannot resolve. (Dkt. No. 1-1 at 25.)

In an attempt to satisfy Article 16.2(a), an initial meeting occurred on June 29, 2011, with no agreement reached. It appears the meeting primarily involved Robert Abbott, on behalf of Respondent LIUNA, arguing that the disputed work was traditional and that 16.2(a) and (b) should not apply. Abbott is the assistant business manager for the Washington and Northern Idaho District Council of Laborers (a LIUNA-affiliate). (Dkt. No. 43-1 at 20.) Oddly, LIUNA now claims Abbott never represented it. (Dkt. No. 52-15 at 3.) Despite not being a party to the dispute or an International Union, BCTC attended that meeting and spoke against the Carpenter's position regarding the disputed work assignment. (Dkt. No. 43-1 at 20.) Ed Triezenberg, Director of Contract Administration at Carpenters, represented Carpenters at the meeting. (Dkt. No 53-1 at 2.) Triezenberg argued an arbitrator should be selected in accordance with 16.2(a) and 16.2(b) since Carpenters claimed the disputed work was non-traditional. (Dkt. No. 43-1 at 21.)

Any arbitration was frustrated by the death of the appointed arbitrator. Article 16.2(b) of the PLA provides that if the International Unions cannot resolve the dispute within 15 days, any party can refer the matter for arbitration to John Dunlop or a mutually agreed upon successor. (Dkt. No. 1-1 at 25.) Before the dispute could be arbitrated Dr. Dunlop died. The parties were required to mutually agree to a successor, but were unable to do so. On June 30, 2011, Carpenters proposed to Abbott that Michael Beck be appointed as successor, which Abbott rejected the same day. (Dkt. No. 53-4 at 2, Dkt. No. 53-5 at 2.) On July 12, 2011, Carpenters filed this action to compel arbitration and appoint Beck as arbitrator.

On August 24, 2011, the Joint Administrative Committee ("JAC"), which is composed of all parties to the PLA and responsible for its implementation, amended the PLA to create a new procedure for appointing arbitrators under Article 16.2(b). (Dkt. No. 43-1 at 48.) This procedure specifies that the arbitrator will be selected by the International Unions and Contractor through alternatively striking "from among the West Coast members of the jurisdictional issues arbitration panel of the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry." (Dkt. No. 53-7 at 2.)

The parties dispute whether the new PLA 16.2(b) should apply, and no resolution as to who should arbitrate the dispute has been achieved. (Dkt. No. 43-1 at 52, 54, 57, 64.) On March 19, 2012, Alan Clune, business manager for Street Pavers, Sewer, Watermain and Tunnel Workers Local 440, a local affiliate of LIUNA and not a party to this suit, reiterated the offer to select an arbitrator pursuant to the amended 16.2(b). (Dkt. No. 43-1 at 60.) On April 6, 2012, Triezenberg responded to both Abbott and Clune by proposing four arbitrators from which Carpenters and LIUNA could work. (Dkt. No. 43-1 at 65.) This proposal was not in accordance with the amended PLA Art. 16.2(b). Abbott did not respond to this offer. Clune responded on

ORDER ON SUMMARY JUDGMENT MOTIONS- 3

1  April 16, 2012 that the list was acceptable to his Local and to LIUNA. (Dkt. No. 43-1 at 67.)
2  Complicating matters is the fact Triezenberg's April 6, 2012, letter stated that Carpenters does
3  not recognize Clune as a representative of LIUNA. (Dkt. No. 43-1 at 65.) Clune's response letter
4  on April 16, 2012, states that neither he nor Abbott works for LIUNA. (Dkt. No. 43-1 at 67.)
5  Carpenters maintains that Clune's acceptance of proposed arbitrators was not an agreement to
6  arbitrate on behalf of LIUNA. (Dkt. No. 56 at 7.) Then on April 20, 2012, counsel for LIUNA
7  sent a letter to Carpenters counsel stating that Abbott is not an employee or agent of LIUNA but
8  instead "has always been acting on behalf of the District Council." (Dkt. No. 52-15 at 3.) On
9  May 2, 2012, Carpenters received a letter from counsel for BCTC stating that it did not object to
10 selecting the arbitrator from the list provided by Carpenters. (Dkt. No. 52-5 at 2.) LIUNA has not
11 sent a similar letter to Carpenters.
12     Both LIUNA and BCTC have submitted motions for summary judgment primarily
13 arguing the case is moot.

**Analysis**

I.   Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the underlying facts in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"

1  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1060 (9th Cir. 2002) (quoting Anderson, 477
2  U.S. at 248). The moving party is entitled to judgment as a matter of law when the nonmoving
3  party fails to make a sufficient showing on an essential element of a claim in the case on which
4  the nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323
5  (1985).

6  II.     LIUNA's Motion for Summary Judgment

7          LIUNA contends that the case is moot and that Carpenters lack standing. Neither
8  argument has traction.

9          A.  Mootness

10         The Court rejects LIUNA's argument that the case is moot. Both the appointment of an
11 arbitrator and arbitration of the dispute are live issues for which the Court can grant relief.
12         "Federal courts lack jurisdiction to decide moot cases because their constitutional
13 authority extends only to actual cases or controversies." Iron Arrow Honor Soc'y v. Heckler, 464
14 U.S. 67, 70 (1983). "To qualify as a case fit for federal-court adjudication, 'an actual controversy
15 must be extant at all stages of review, not merely at the time the complaint is filed.'" Arizonans
16 for Official English v. Arizona, 520 U.S. 43, 67 (1997) (citation omitted). Where a party has not
17 agreed to everything that the opposing party has demanded, the case is not moot. See GCB
18 Commc'ns Inc. v. U.S. South Commc'ns, Inc., 650 F.3d 1257 (9th Cir. 2011) (finding the case
19 not moot where one party had only agreed to pay less than the full amount demanded by the
20 opposing party).
21         A dispute of fact exists as to whether LIUNA has complied with the first step in resolving
22 this dispute short of arbitration. Article 16.2(a) of the PLA requires that "the International unions
23 and the involved Contractor shall meet promptly to resolve the dispute." It is not clear whether
24

Abbott sufficiently represented LIUNA at the initial meeting between Carpenters and LIUNA on June 29, 2011 to satisfy Article 16.2(a). (Dkt. No. 1-1 at 25, Dkt. No. 56 at 3.). Sound Transit has stated its belief that the meeting was inadequate to satisfy 16.2(a). (Dkt. No. 43-1 at 40.) LIUNA now contends that Abbott has not acted on its behalf and there is no evidence showing LIUNA was actually present at the meeting. It is unclear whether the requisites of 16.2(a) have been met, though it would not appear to be Carpenters' fault should it be the case. Separately, the Court notes Abbott objected to even proceeding under the Article 16.2(a) and 16.2(b) procedures because he claimed the work was not "non-traditional" and therefore did not trigger those dispute resolution articles. (Dkt. No. 53-5 at 2.) Yet Article 16.2(a) clearly states that a party need only claim that the work is non-traditional to trigger the articles, which Petitioner clearly did. (Dkt. No. 1-1 at 25.) LIUNA's argument that it has mooted Petitioner's claim by agreeing to arbitrate is erroneous when it appears it may never have adequately participated in the 16.2(a) meeting.

Even if LIUNA has satisfied its obligations under Article 16.2(a), the facts do not confirm LIUNA has ever expressed an agreement to appoint a successor arbitrator. Article 16.2(b) also requires the agreement of the International Unions in the appointment of a successor to Dr. Dunlop. (Dkt. No. 1-1 at 25.) This is true of both the original and amended 16.2(b) procedure. (Dkt. No. 53-7 at 2.) Respondent LIUNA has not directly made any offer to Petitioner and cannot claim that it has mooted Petitioner's petition to compel arbitration. Petitioner reasonably concludes that Clune, who works for a Local Union, was not representing the International Union—LIUNA—when he dropped any conditions on appointing the arbitrator in his last letter on April 16, 2012. (Dkt. No. 43-1 at 67.) On this record, the Court cannot find the petition moot.

1  Because the Court finds that Petitioner's petition is not moot, the Court DENIES

2 Respondent LIUNA's motion for summary judgment.

3  B.  Standing

4  The Court continues to find Petitioner has standing.

5  The party invoking federal jurisdiction bears the burden of establishing the three elements

6 of standing: (1) actual or imminent injury in facts; (2) a causal connection between the injury and

7 the conduct complained of; and (3) likelihood that a favorable decision will redress the injury.

8 See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561-62 (1992). Respondent argues that a

9 favorable decision by this Court would not redress the injury complained of by Petitioner

10 because what Petitioner asks for is a modification of the PLA, which none of the parties has the

11 unilateral authority to amend. (Dkt. No. 42 at 19.)

12  The Court has already held that Petitioner is not seeking to alter the PLA and that it is

13 merely seeking to compel arbitration and appoint an arbitrator for this particular dispute. (Dkt.

14 No. 26 at 3-4.) Petitioner is not seeking to appoint an arbitrator for any other dispute and thus is

15 requesting a remedy firmly within the scope of the PLA. The Court finds no reason to revisit this

16 issue. The Court DENIES LIUNA's motion for summary judgment on this issue.

17  C.  Amendment of PLA Article 16.2(b)

18  The parties dispute whether the original Article 16.2(b) or the amended version should

19 apply in this case. The Court finds that the original Article 16.2(b) governs this dispute.

20  Under LMRA § 301, courts interpret whether a party has breached the arbitration clause

21 in a collective bargaining agreement because "arbitration is a matter of contract and a party

22 cannot be required to submit to arbitration any dispute which he has not agreed so to submit."

23 United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582 (1960). "When

24

ORDER ON SUMMARY JUDGMENT MOTIONS-
7

1 deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should
2 apply ordinary state-law principles that govern the formation of contracts." First Options of
3 Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

4   Washington State law governing contract interpretation states that "'the cardinal rule with
5 which all interpretation begins is that its purpose is to ascertain the intention of the parties.'"
6 Berg v. Hudesman, 115 Wn.2d 657, 663 (1990) (citation omitted). Extrinsic evidence is
7 admissible to determine the intended meaning of the parties: "In discerning the parties' intent,
8 subsequent conduct of the contracting parties may be of aid, and the reasonableness of the
9 parties' respective interpretations may also be a factor in interpreting a written contract." Id. at
10 668.

11   The evidence indicates the parties did not mutually intend to be retroactively bound by
12 the amended Article 16.2(b). The amended PLA contains no statement regarding its retroactive
13 application to preexisting disputes. Extrinsic evidence indicates there was no mutual intent of the
14 parties to be retroactively bound by the amended version of 16.2(b). When the JAC amended
15 Article 16.2(b), those present suggested the solution was only forward-looking. (See Dkt. No.
16 43-1 at 48.) Alec Stephens of Sound Transit, who proposed the amendment, suggested the
17 amendment applied prospectively only, stating it is "for the parties to determine as they proceed
18 with their dispute." (Id.)  He also stated that "Sound Transit is responding to the fact that Article
19 16.2(b) as it currently is written does not work and we want to amend the PLA to make it work
20 over the long term." (Id.) The Court finds the original Article 16.2(b) properly governs the
21 procedure for appointment of an arbitrator in this dispute, not the amended Article.

22 III. BCTC's Motion for Summary Judgment

23
24

1    BCTC argues the case is moot because the project is complete and the disputed work was
2 never performed. The Court DENIES this aspect of the motion. Petitioner asks the Court to
3 permit it further discovery on BCTC's substantive challenge to the claim against it, which the
4 Court GRANTS. The Court thus RESERVES RULING on this aspect of the motion for
5 summary judgment. Lastly, the Court addresses the request for attorneys' fees, which BCTC
6 challenges.

7    A.  Mootness

8    BCTC incorrectly argues the completion of the tunneling project moots Petitioner's
9 petition to compel arbitration. Completion of the underlying project does not moot the request
10 for arbitration.

11    The Ninth Circuit has held that the completion of work underlying a jurisdictional dispute
12 does not moot a request to compel arbitration and appoint an arbitrator. United Ass'n of
13 Journeymen and Apprentices v. Bechtel Constr. Co., 128 F.3d 1318, 1322 (9th Cir. 1997). The
14 role of the Court is to determine whether an agreement was entered into and "[o]nce a court
15 determines that the parties agreed to arbitrate a dispute, then that dispute must be submitted to
16 the arbitrator." Local Union No. 370 of Int. Union of Operating Eng. v. Morrison-Knudsen Co.,
17 Inc., 786 F.2d 1356, 1358 (9th Cir. 1986). "All claims on the merits – even if they appear
18 frivolous – should be decided by the arbitrator." Pipe Trades Council of Northern California v.
19 Underground Contractor's Ass'n of Northern California, 835 F.2d 1275, 1277 (9th Cir. 1988).
20 Additionally, procedural issues regarding compliance with the PLA dispute resolution steps are
21 to be decided by the arbitrator since, "labor disputes . . . cannot be broken down so easily into
22 their 'substantive' and 'procedural' aspects." John Wiley & Sons, Inc. v. Livingston, 376 U.S.
23
24

ORDER ON SUMMARY JUDGMENT MOTIONS-
9

1  543, 556 (1964). For example, in <u>Bechtel</u> the question of whether work had actually been

2  completed on the project was decided by the arbitrator in that case. <u>Bechtel</u>, 128 F.3d at 1321.

3      This case is not mooted by the completion of the underlying work. The Court need only

4  decide whether an agreement to arbitrate was entered, whether arbitration happened or was

5  delayed and how to ensure arbitration goes forward. The issue of whether the disputed work

6  assignment has been completed or not and how that impacts the underlying dispute is for the

7  arbitrator to decide. The Court DENIES this aspect of BCTC's motion and does not find the

8  claim moot.

9      B.  <u>Petitioner's Request to Defer Summary Judgment for Discovery</u>

10      BCTC seeks dismissal of the suit against it on the theory it is not a party to the request to

11  arbitrate and that it did nothing to delay the arbitration. The Court defers summary judgment to

12  allow for additional discovery on the claim that BCTC colluded with LIUNA to delay

13  arbitration.

14      Federal Rule of Civil Procedure 56(d) allows the Court to deny or continue a motion for

15  summary judgment if the non-moving party establishes that it cannot present facts essential to

16  justify its opposition. Fed. R. Civ. P. 56(d). The party seeking such a continuance must make (a)

17  a timely application which (b) specifically identifies (c) relevant information, (d) where there is

18  some basis for believing that the information sought actually exists. <u>Emplrs. Teamsters Local

19  Nos. 175 & 505 Pension Trust Fund v. Clorox Co.</u>, 353 F.3d 1125, 1129-1130 (9th Cir. 2004).

20  The Court may deny the request unless the party opposing summary judgment articulates how

21  additional discovery may preclude summary judgment and demonstrates diligence in pursuing

22  discovery thus far. <u>Qualls v. Blue Cross of California, Inc.</u>, 22 F.3d 839, 844 (9th Cir. 1994). The

23  burden is on the nonmoving party to establish that proceeding with additional discovery would

24

ORDER ON SUMMARY JUDGMENT MOTIONS- 10

produce evidence sufficient to defeat summary judgment and that the evidence it seeks is in existence. Chance v. Pac-Tel Teletrac Inc., 242 F.3d 1151, 1161 n.6 (9th Cir. 2001).

Here, the issue is whether there is a sufficient evidentiary basis for Petitioner to maintain that BCTC has colluded with LIUNA to delay arbitration. To adequately support its case, Petitioner seeks access to individuals it has currently been unable to depose due to Respondents' delay and to documents previously requested but not produced. Carpenters has provided sufficient indication that it may be able to discover the evidence it seeks through these depositions and review of the unreleased discovery. The Court finds it appropriate to permit more discovery on this aspect of the case before ruling on the present motion for summary judgment.

The Court GRANTS Petitioner's request for additional time and RESERVES RULING on Respondent BCTC's motion for summary judgment. Petitioner must refile its opposition to the motion for summary judgment within 10 days of completing the depositions and obtaining the requested discovery. BCTC must file its reply within 4 days after Carpenters files its opposition.  Briefing shall be limited to the sole question of whether the facts show collusion between BCTC and LIUNA in delaying Petitioner's request to arbitrate and appoint a successor to Dr. Dunlop to arbitrate the discrete dispute over the tunnel work.

C.  Attorney's Fees

BCTC correctly argues attorneys' fees cannot be awarded on the basis of a finding of bad faith delay tactics, where the delay itself is an element of the underlying cause of action.

"A court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly or for oppressive reasons.'" Chambers v. NASCO, 501 U.S. 32, 45-46 (1991). The Ninth Circuit has held "that an unjustified refusal to abide by an arbitrator's award may equate an

ORDER ON SUMMARY JUDGMENT MOTIONS- 11

1  act taken in bad faith, vexatiously or for oppressive reasons." Int'l Union of Petroleum & Indus.

2  Workers v. W. Indus. Maint., Inc., 707 F.2d 425, 428 (9th Cir. 1983).

3        The Ninth Circuit has also held that attorneys' fees are improperly shifted "based solely

4  upon a finding of bad faith as an element of the cause of action presented in the underlying suit."

5  Ass'n of Flight Attendants, AFL-CIO v. Horizon Air Indus., Inc., 976 F.2d 541, 550 (9th Cir.

6  1992). If a court were to issue sanctions for pre-litigation bad faith conduct that is implicitly part

7  of the underlying cause of action there is a danger of over-expanding the scope of the Court's

8  punitive authority and over-expanding this exception to the American Rule. Id. The Court

9  separately notes there is no dispute that Petitioner's request for attorney's fees does not present

10 an independent cause of action in this case. (Dkt. No. 78 at 15.)

11       BCTC correctly argues that pre-litigation delays in arbitration cannot form the basis of a

12 finding of bad faith sufficient to justify the imposition of attorney's fees. The facts of Horizon

13 Air support this argument. In Horizon Air, a flight attendants' union brought an action under the

14 Railway Labor Act alleging that Horizon had violated its duty "to exert every reasonable effort

15 to reach an agreement" in labor negotiations. Id. at 543-44. Delay of negotiations was the

16 essence of the cause of action, since "the court's decree prohibited Horizon only from 'engaging

17 in any conduct designed to forestall an agreement' with the union." Id. at 544. Looking to the

18 NLRA (now the LMRA) for interpretive guidance, the court defined Horizon's duty as "at least

19 the avoidance of 'bad faith' as defined under the NLRA, that is 'going through the motions with

20 a desire not to reach an agreement.'" Id. at 544. The court declined to extend the bad faith

21 exception in that case "solely upon a finding of bad faith as an element of the cause of action

22 presented in the underlying suit." Id. at 550. Here, similarly, the Court will not award attorney's

23 fees based solely on evidence of bad faith delay that occurred prior to the filing of the petition. A

24

ORDER ON SUMMARY JUDGMENT MOTIONS-
12

claimed violation of the duty to arbitrate under the PLA necessarily includes allegations of delay, whether they rise to the level of bad faith or not. It would thus be improper to allow Petitioner to use the same evidence of pre-litigation delay as evidence of bad faith in support of an award of attorneys' fees. Any request for attorney's fees based on claims of bad faith cannot be based exclusively on evidence of pre-litigation delay.

Given that discovery is ongoing on this issue, the Court does not render any judgment on the factual merits of the request for fees.

## Conclusion

The Court DENIES LIUNA's motion for summary judgment. Petitioner's claim against LIUNA is not moot. The Court also DENIES in part BCTC's motion as to mootness, finding the claims against BCTC not to be moot. The Court RESERVES RULING in part on Respondent BCTCs motion for summary judgment in order to allow for additional discovery on the issue of whether Petitioner's claim against BCTC can move forward.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 17th day of July, 2012.

Marsha J. Pechman
United States District Judge