UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PACIFIC NORTHWEST REGIONAL COUNCIL OF CARPENTERS,<br><br>Petitioner,<br><br>v.<br><br>LABORERS INTERNATIONAL UNION OF NORTHERN AMERICA,<br><br>Respondent. | CASE NO. C11-1164 MJP<br><br>ORDER GRANTING MOTION TO DISMISS |

This matter comes before the Court on Respondent's motion to dismiss. (Dkt. No. 167.) The Court considered the motion, Petitioner's response (Dkt. No. 170), Respondent's reply (Dkt. No. 173) and all related documents. The Court GRANTS the motion and DISMISSES this case as moot.

**<u>Background</u>**

This case concerns a union dispute arising out of the assignment of compressed air tunnel work under the Sound Transit Link Light Rail Project Labor Agreement ("PLA"). The prime contractor, Traylor-Frontier-Kemper ("TFK") assigned compressed air tunnel work to Ballard

ORDER GRANTING MOTION TO DISMISS- 1

1  Diving and Salvage ("Ballard"). (Dkt. No. 43-1 at 38.) On May 17, 2011, Ballard assigned its
2  work to LIUNA (Laborers International Union of Northern America)-affiliated members.
3  Petitioner Pacific Northwest Regional Council of Carpenters ("Carpenters") objected to this on
4  May 24, 2011. (Id. at 12.)
5      On June 27, 2011, Carpenters asserted the disputed work involved allegedly "non-
6  traditional" work and requested to proceed with dispute resolution under PLA Article 16.2(a).
7  (Dkt. No. 43 at 5.) Under that article, the International Unions and the Contractor must meet to
8  resolve disputes the local unions cannot resolve. (Dkt. No. 1-1 at 25.)
9      In an attempt to satisfy Article 16.2(a), an initial meeting occurred on June 29, 2011, with
10 no agreement reached. It appears the meeting primarily involved Robert Abbott, on behalf of
11 Respondent LIUNA, arguing the disputed work was traditional and that 16.2(a) and (b) should
12 not apply. Abbott is the assistant business manager for the Washington and Northern Idaho
13 District Council of Laborers (a LIUNA-affiliate). (Dkt. No. 43-1 at 20.) LIUNA later claimed
14 Abbott never represented it. (Dkt. No. 52-15 at 3.) Ed Triezenberg, Director of Contract
15 Administration at Carpenters, represented Carpenters at the meeting. (Dkt. No 53-1 at 2.)
16 Triezenberg argued an arbitrator should be selected in accordance with 16.2(a) and 16.2(b) since
17 Carpenters claimed the disputed work was non-traditional. (Dkt. No. 43-1 at 21.)
18     Any arbitration was frustrated by the death of the appointed arbitrator. Article 16.2(b) of
19 the PLA provides that if the International Unions cannot resolve the dispute within 15 days, any
20 party can refer the matter for arbitration to John Dunlop or a mutually agreed upon successor.
21 (Dkt. No. 1-1 at 25.) Before the dispute could be arbitrated Dr. Dunlop died. The parties were
22 required to mutually agree to a successor, but were unable to do so. On June 30, 2011,
23 Carpenters proposed to Abbott that Michael Beck be appointed as successor, which Abbott
24

ORDER GRANTING MOTION TO DISMISS- 2

1  rejected the same day. (Dkt. No. 53-4 at 2, Dkt. No. 53-5 at 2.) On July 12, 2011, Carpenters
2  filed this action to compel arbitration and appoint Beck as arbitrator.

3      The Court denied three motions for summary judgment. (Dkt. Nos. 110, 120). In the first
4  Order, the Court noted completion of the underlying project did not moot the petition to compel
5  arbitration, and the issue of arbitration remained a live issue. (Dkt. No. 110 at 9.) The Court also
6  noted "attorneys' fees cannot be awarded on the basis of finding of bad faith delay tactics, where
7  the delay itself is an element of the underlying cause of action." (Id. at 11.) It was made clear in
8  this Order that "Petitioner's request for attorney's fees does not present an independent cause of
9  action in this case." (Id. at 12.)

10     On August 29, 2012, Respondent LIUNA moved to compel arbitration. (Dkt. No. 127.)
11 Petitioner opposed the motion and asked the Court to sua sponte enter a partial judgment against
12 LIUNA and other Respondents. (Dkt. No. 128 at 2.) On October 23, 2012, the Court granted the
13 motion to compel arbitration. (Dkt. No. 155.) The arbitration took place, and on May 28, 2013 a
14 copy of the arbitrator's opinion and award was filed with the Court. (Dkt. No. 163.) LIUNA
15 moved to dismiss or alternatively for summary judgment, arguing the arbitration resolved the
16 claims between the parties and there is no remaining case or controversy over which this Court
17 has jurisdiction. (Dkt. No. 167 at 2.) Carpenters opposed the motion, arguing the case is not moot
18 because the wrongful conduct is capable of recurring and that Section 301 of the LMRA entitles
19 a petitioner to attorney's fees when the party refusing to arbitrate does so in bad faith or without
20 justification. (Dkt. No. 170 at 1.)

21                               **Discussion/Analysis**

22     Article III of the Constitution grants the Judicial Branch authority to adjudicate cases or
23 controversies, and the power of a federal court cannot be invoked in the absence of a case or
24

1  controversy. Already, LLC v. Nike, Inc., 133 S.Ct. 721, 726 (2013). A case or controversy must
2  exist not only at the beginning of a case, but throughout all stages. Id. "In general a case becomes
3  moot when the issues presented are no longer 'live' or the parties lack a legally cognizable
4  interest in the outcome." Murphy v. Hunt, 455 U.S. 478, 481 (1982)(internal citations omitted).
5  However, a defendant cannot automatically moot a case by ending its unlawful conduct once
6  sued. Already, 133 S.Ct. at 727. Instead, "a defendant claiming that its voluntary compliance
7  moots a case bears the formidable burden of showing that it is absolutely clear the allegedly
8  wrongful behavior could not be reasonably expected to recur." Friends of the Earth v. Laidlaw
9  Envtl. Servs. (TOC), Inc., 528 U.S. 167, 190 (2000).

10      There is no continuing case or controversy here. It is undisputed in this case the
11  arbitration resolved the underlying jurisdictional dispute between the Parties. (Dkt. No. 170 at 4.)
12  It also resolved the Petition, the point of which was to achieve arbitration of the underlying
13  dispute. Carpenters contends the dispute was never about the underlying jurisdictional dispute,
14  but about LIUNA's bad faith refusal to arbitrate under the PLA. (Dkt. No. 4 at 14.) They contend
15  that because unions and contractors such as LIUNA routinely enter into PLAs on public projects,
16  LIUNA could engage in similar behavior in the future with new contracts. (Dkt. No. 170 at 4.)
17  Carpenters argues "[i]f the Court adopts LIUNA's argument, LIUNA will be free to refuse
18  arbitration in every construction project that requires arbitration, wait until the project is nearing
19  completion, then submit the matter to arbitration and have the case declared moot." (Id. at 6.)
20  This argument fails.

21      Carpenters suggestion this dispute was not about the underlying claim but about the bad
22  faith refusal to arbitrate is not reflected in the Petition brought before this Court. While the
23  background section in the Petition discusses an alleged overarching plan to drive up costs by
24

1  refusing to arbitrate, the Carpenters asked only for the following relief: (1) an order appointing
2  Michael Beck as arbitrator, (2) an order compelling arbitration, (3) judgment in conformance
3  with an order compelling arbitration, (4) attorneys fees and costs, and (5) other and further relief
4  as the Court deems just and proper. (Dkt. No. 1 at 7.) The actual relief sought in this Court was
5  related to achieving the arbitration of the underlying dispute in this case. (Id.) There was no bad
6  faith claim. The arbitration of the underlying dispute is now completed, and the controversy
7  actually brought before this Court cannot recur.

8         As a secondary matter, the facts of this case do not demonstrate the type of circumstance
9  the voluntary cessation exception to mootness is intended to avoid. "The voluntary cessation
10 exception 'traces to the principle that a party should not be able to evade judicial review, or to
11 defeat a judgment, by temporarily altering questionable behavior." ACLU of Mass. v. United
12 States Conf. of Catholic Bishops, 705 F.3d 44, 54 (1st Cir. 2013), quoting City News & Novelty,
13 Inc. v. City of Waukesha, 531 U.S. 278, 284 n.1 (2001). The idea is to avoid allowing a
14 manipulative litigant to immunize itself from suit by altering behavior long enough to secure a
15 dismissal and reinstating the behavior immediately after that goal is achieved. Id. at 54-55. Here,
16 LIUNA has taken responsibility for the pre-litigation delay. (Dkt. No. 173 at 2.) Since this case
17 has been pending in this Court, delay in achieving arbitration, which Carpenters contends this
18 case was always about, can hardly be attributed only to LIUNA. In fact, LIUNA ultimately
19 submitted the motion to compel arbitration (Dkt. No. 129) that finally brought this matter to
20 arbitration. Carpenters opposed the motion to compel arbitration, arguing it was a dispositive
21 motion filed past the dispositive motion deadline. (Dkt. No. 128 at 3.) Nothing about the way this
22 lawsuit progressed indicates LIUNA is attempting to avoid judgment against them for failure to
23
24

1 | arbitrate by temporarily altering their behavior. The circumstances here lend themselves to a finding of mootness.

To the extent Carpenters argues there is a remaining claim for attorneys fees, this Court already ruled on the issue. In the Order on summary judgment signed July 17, 2012, this Court explicitly stated it "will not award attorney's fees based solely on evidence of bad faith delay that occurred prior to the filing of the petition." (Dkt. No. 110 at 12.) This is the law of the case and Carpenters presents no valid reason to revisit the issue.

## Conclusion

Because the arbitration of the underlying cause of action resolved all issues brought before the Court in this case, this case is DISMISSED in its entirety as moot.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 16th day of October, 2013.

Marsha J. Pechman
Chief United States District Judge

ORDER GRANTING MOTION TO DISMISS- 6